By the Court.—Sanford, J.
The only question presented on this appeal, is that which was determined adversely to the plaintiff by the learned j udge, before whom the trial was had, when he dismissed the complaint, on the ground that the negligence of the plaintiff’s intestate contributed to the accident which caused his death. The rule of law applicable to cases of this description, is too well settled to require, or to admit of discussion. The only difficulty or embarrassment arises in its application to the varying circumstances of particular cases. The rule is that in actions upon the case for negligence, a recovery can be had only when the injury is caused solely by the defendant’s neglect.
“ If negligence of the plaintiff ” (or, in actions under the statute of 1847, as amended in 1849, if the negligence of plaintiff’s decedent), “contributing to the injury, clearly appears from all the circumstances, or is established by uncontroverted evidence, it is the duty of the court to take the case from the jury and non-suit the plaintiff” (Weber v. N. Y. Central R. R. Co., 58 N. Y. 451).
*252 “It belongs to the definition of the canse of action, that the injury must have been occasioned solely by the negligence of the defendant; and either by direct proof given by the plaintiff, or from the circumstances attending the injury, the jury must be authorized to find, affirmatively, that the person injured was free from fault which contributed to the accident, or the action is not maintained (Reynolds v. N. Y. Cen. and H. R. R. Co., 58 N. Y. 248).
There can be no doubt that an employer is under obligation to use all reasonable precaution in providing for the use of his laborers and servants such facilities and appliances for the performance of their duties, as will not endanger their persons, nor can it be questioned that a servant has the right to rely upon the prudence and caution of his employer, or the agent of his employer, to whose orders he is subject, in so far as the use of implements furnished for the performance of his duties is concerned, unless the dangerous or defective character of such implements is so manifest, that a man of ordinary prudence and intelligence, engaged in similar pursuits, would, on mere inspection, be deterred from using them. Any abuse of the confidence which a laborer has the right to repose in the reasonable care and caution which his employer is under obligation to exercise in his behalf, should subject the latter to liability for any damages arising therefrom. But when the servant is fully aware of the difficulties and hazards he is required, or expected to encounter, and without objection or protest, undertakes or continues in a hazardous occupation, subjecting himself voluntarily to danger that may reasonably be anticipated, and of which he is fully aware, he should not be exonerated from the consequences of his own rashness or negligence, by a mere blind trust in the superior wisdom of his master, or his master’s agent, to whom he is subordinate ; a fortiori, if in the perform *253 anee of a hazardous duty, he negligently omits to adopt the usual and proper precautions which have been previously recommended or required by the master, or the master’s representative, and which his own experience has shown to be useful, as tending to avert or diminish the risks to be encountered, his want of care cannot be excused by a pretended reliance on the prudence and judgment of his superior, whose wise suggestions he wilfully disregards. It appears from the evidence of numerous witnesses for the plaintiff, that the condition of the bridge by the breaking of which the plaintiffs’ intestate lost his life, was that of palpable insecurity; that the plaintiffs’ intestate was well aware of this fact; that he had already been warned by a previous occurrence of the kind; that subsequently to that occurrence, the practice of blocking the bridge, so as to diminish its tension, and decrease its fragility, had been adopted; that he had himself often assisted in adjusting the blocks, but, in common with his associates, voluntarily went to work without adopting this very simple expedient, at seven o’clock on the morning of the accident, and the bridge broke within five minutes thereafter.
The testimony of Patrick Daly upon this point is very explicit. He testified to having been present when the accident occurred. Seven o’clock was the hour for commencing work. It was about three or four or five minutes after seven when the bridge broke. Witness and three others, besides Jones, were on the bridge at the time, taking out a plate of grating that belonged to the ship.
Being cross-ex mined, he testified as follows :
“ Q. Do you remember that when you were at work there, before this day of the accident, that this bridge was blocked up underneath, when it was being used? A. Yes, sir ; it had been blocked at the string piece at the edge of the dock.
*254 “Q. Did you notice that, on this morning of the accident, it was not blocked at the string piece? A. Ho, sir; it was not blocked.
“ Q. Describe to the jury, if you please, how it was blocked up ? A. Why, by blocking it on the string piece ; we took the spring out to keep it from breaking. We were bringing down heavy weights on it, and we blocked it, time after time, to take the spring out to keep it from breaking.
“Q. How long before the accident had you and Jones been working, in taking things over that bridge ? A. I had been working for five or six weeks, along with Jones.
“Q. Taking these heavy articles over this bridge? A. Yes, sir; I took eighteen hundred pounds, a donkey engine down on the bridge, and it did not break, about two days before that, and then something over two hundred pounds broke it.
“ Q. How did it happen that you began to work at the bridge, that morning, before it was blocked up ? A. We went to work on our own account, that morning ; we were working at the same job the day before.
“ Q. But why did you go to work without waiting to have it blocked it ? A. It was our own loss, of course; we went to work without its being strengthened, or anything else, that morning; we went to work ourselves.
“ Q. When you said 1 when we were taking things over the bridge we fixed the blocks,’ who did you mean by ‘we?’ A. The party of men who worked in it.
“Q. Who were the men who were engaged in shifting the blocks in the way you have described, when the tide rose or fell ? A. Mr. Eicketts was our boss on that.
11 Q. Who were the men who were doing it? A. John Polan and me, and Ferguson and Jimmy Jones.
*255 “ Q. Was Jimmy Jones the man who lost his life? A. Yes, sir.
“ By Mr. Russell: Q. Do you mean to say that you ever saw James Jones put a block under that bridge % A. Why, certainly, he put along with me.
“ Q. Did you ever see Jimmy Jones take the block and put it under the bridge ? A. Yes, sir; along with me, he did it, too.
“Q. Did you ever see him do it ? A. Yes, sir.
“ The Court: Do you mean he himself alone, or with others ? ”
“Mr. Russell: Either way.”
It thus appears, by the uncontradicted testimony of a witness called by the plaintiff, that the usual and customary expedient of blocking the bridge, which had been resorted to, and had proved effectual previously, was on this occasion omitted through the culpable oversight, indifference and neglect of decedent and his associates, who were well aware of the importance and necessity of adopting such a precaution. In the recent case of Plank, administrator, &c., v. The New York Central and Hudson River R. R. Company (60 N. Y. 607), which is in some respects analogous, it was held that the question of contributory negligence was properly submitted to the jury, and that there was no error in refusing to non-suit the plaintiff; but the ground upon which the decision was put, clearly distinguishes the case from that now under consideration, and impliedly recognizes the principle which must govern in its determination. In that case, deceased, a brakeman in the employ of defendants, was, at the time of the accident, in the act of coupling additional cars to the train on which he was employed. In so doing, he stepped into a sluice which ran under the tracks, across which a board or plank was laid ; otherwise the trench was left open. The train of the deceased had been in the habit of stopping there, and he knew of the trench, which had *256 been there over ten years, in the same condition. The accident was in the night season, and there was snow on the ground. It was held that defendant was bound to provide an ordinary and reasonably safe place for the performance of the work of coupling the cars, and that the evidence of defendant’s negligence was sufficient- to require the submission of that question to the jury; also, that the fact of the knowledge of deceased of the existence of the trench, was not sufficient to charge him, under the circumstances, with contributory negligence, as the act in which he was engaged necessarily required his whole attention and thought. In the case at bar, the nature of decedent’s emploj'ment was not such as to engross his attention, to the exclusion of all thought of the hazards he encountered. On the contrary it was his duty, in common with his fellow-servants, to diminish those hazards, as well in the interest of Ms employer as for Ms own sake ; a duty which, in common with them, he wholly neglected to perform. He was not only well aware of the insecurity of the bridge, but had at his hand the means of imparting to it some degree of stability, and on previous occasions had been required so to do. There was nothing in the nature of his employment to distract his attention from the exigencies of the case. Ordinary care for Ms own safety, as well as a proper regard for his employers’ interests should have induced him to adopt the precautions which experience had proved to be necessary, and which he had himself been accustomed to use. Under these circumstances, I think the death of plaintiff’s intestate cannot be attributed solely to the defendant’s neglieence ; and that the evidence would not warrant an affirmative finding that the deceased, “ was free from fault which contributed to the accident.” If not, the action cannot be maintained, and the non-suit was properly directed.
*257 The judgment should be affirmed with costs.
Curtis J., concurred.